**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
MICHAEL NIELSEN, on behalf of himself and    :
on behalf of all other similarly-situated persons,    :
     :    Civil Action No.
               Plaintiff,    :    12 CV 8383 (RZ)(KNF)
     :
         v.    :
     :
THE CLARKES' GROUP, LLC, d/b/a P.J.    :
CLARKE'S; P.J. CLARKE'S AT LINCOLN    :
SQUARE, LLC, d/b/a P.J. CLARKE'S; P.J.    :
CLARKE'S ON THE HUDSON, LLC, d/b/a P.J.    :
CLARKE'S; and ERS ENTERPRISES, INC., d/b/a    :
P.J. CLARKE'S,    :
     :
               Defendants.    :
----------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO
# MOTION TO DISMISS

THOMPSON WIGDOR LLP

85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ............................................................................................................................ 3

ARGUMENT .................................................................................................................. 7

    I.    The Amended Complaint States A Plausible Claim for Relief Under
        26 U.S.C. § 7434 ................................................................................................ 7

        A.  Defendants' Rule 8 Argument Relies Entirely On Their False Claim That Mr.
            Nielsen Alleged He Was the Only Victim of Defendants' IRC Violations ............ 8

    II.   The Amended Complaint Pleads Fraud with Sufficient Particularity Under Rule 9 ... 13

        A.  The Amended Complaint Adequately Pleads Fraudulent Intent ........................... 13

        B.  The Amended Complaint Alleges Specific Facts That Show Fraud .................... 18

        C.  Plaintiff Alleged A Plausible Motive for Defendants' Fraud ................................ 19

CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012) ........................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................7, 12

*Cavoto v. Hayes*,
    08 Civ. 6957, 2010 WL 2679973 (N.D. Ill. July 1, 2010)..................................9

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir.1989) ................................................................................13

*Griffin v. McNiff*,
    744 F. Supp. 1237 (S.D.N.Y. 1990) *aff'd*, 996 F.2d 303 (2d Cir. 1993) ....................13, 19

*In re Refco Inc. Sec. Litig.*,
    826 F. Supp. 2d 478 (S.D.N.Y. 2011) ........................................................13, 19

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ................................................................13, 14, 19

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir.1986) ......................................................................13

*Mayatextil, S.A. v. Liztex U.S.A., Inc.*,
    92 Civ. 4528, 1993 WL 51094 (S.D.N.Y. Feb. 24, 1993)..................................14

*Murphy v. Int'l Bus. Machines Corp.*,
    10 Civ. 6055, 2012 WL 566091 (S.D.N.Y. Feb. 21, 2012)................................16

*Pitcher v. Waldman*,
    11 Civ. 148, 2012 WL 5269060 (S.D. Ohio Oct. 23, 2012)............................8, 9

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ......................................................................15

*T.H.C., Inc. v. Fortune Petroleum Corp.*,
    96 Civ. 2690, 1999 WL 182593 (S.D.N.Y. Mar. 31, 1999)..............................14

*Wexner v. First Manhattan Co.*,
    902 F.2d 169 (2d Cir. 1990) ...........................................................................................................16

## STATUTES and RULES

26 U.S.C. § 6724.........................................................................................................................11

26 U.S.C. § 7434....................................................................................................................*passim*

Fed. R. Civ. P. 8.....................................................................................................................*passim*

Fed. R. Civ. P. 9...............................................................................................................2, 3, 13, 14

Fed. R. Civ. P. 12...........................................................................................................................7, 12

Plaintiff Michael Nielsen ("Plaintiff" or "Mr. Nielsen"), by and through undersigned counsel Thompson Wigdor LLP, submits this Memorandum of Law in Opposition to Defendants The Clarkes' Group LLC ("TCG"), d/b/a P.J. Clarke's, P.J. Clarke's at Lincoln Square, LLC ("PJLS"), d/b/a P.J. Clarke's, P.J. Clarke's on the Hudson, LLC ("PJH"), d/b/a P.J. Clarke's, and ERS Enterprises, Inc.'s ("PJ3rd"), d/b/a P.J. Clarke's (collectively, "Defendants" or "P.J. Clarke's") Motion to Dismiss Portions of Plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

Defendants' partial motion to dismiss is based largely on the false claim that the Amended Complaint alleges that "*only* Plaintiff" was required to overstate his income. Defendants make this claim repeatedly; but, not surprisingly, this proposition is not supported by any citation to any specific allegation in the Amended Complaint.  The reason for this is obvious – Plaintiff simply *never* made *any* such allegation.  Nevertheless, Defendants irresponsibly represent to the Court that:

- The Amended Complaint consists solely of the "implausible claim – that from its hundreds of existing and former waitstaff [*sic*] employees Defendants requested that only Plaintiff overstate his tip income";

- "No plausible claim for relief is alleged, nor could one be, because there is no meaningful financial gain or other advantage to be gained by overstating a single employee's tip income";

- "Plaintiff fails to offer any plausible explanation why Defendants would require only him and none of the other employees to overstate their tip income"; and

- "Plaintiff does not allege any facts that explain why Defendants would implement a plan directed at only one employee when Defendants could achieve a greater benefit if multiple employees were required to overstate tips."

1

Following the submission of Defendants' moving papers, Plaintiff requested an explanation from Defendants of the basis for these representations, but Defendants were unable to identify any allegation of the Amended Complaint that supported these claims.   Thus, Plaintiff is now obligated to oppose a motion based largely on Defendants' misrepresentations.   This is not a situation where Defendants' argument is *merely* disingenuous; rather, Defendants' motion is largely a fabrication which will now needlessly consume the time and resources of the Court.

Moving to the *actual* allegations of the Amended Complaint, Plaintiff unquestionably meets the pleading standards.  If the *actual* allegations were insufficient, Defendants would not have felt it necessary to "make up" allegations to support their motion.  Plaintiff has provided more than sufficient allegations to support an inference that Defendants willfully filed Form W2s with the Internal Revenue Services ("IRS") that fraudulently stated that Mr. Nielsen had earned more income than he actually had.  This constitutes a violation of Internal Revenue Code ("IRC"), 26 U.S.C. § 7434 ("Section 7434"), which provides that: "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."

Faced with the reality that the allegations in the Amended Complaint plainly satisfy Federal Rules of Civil Procedure ("FRCP") 8 and 9, Defendants' partial motion to dismiss blindly disregards them and falsely asserts that Mr. Nielsen's allegations amount to nothing more than legal conclusions.  This is truly bizarre in light of the Amended Complaint's *factual* allegations that:

- Defendants intentionally required Mr. Nielsen to report more tip income than he actually earned on a nightly basis;

- The amount of tip income reported, which was more than Mr. Nielsen actually earned, was declared by Defendants as income on Mr. Nielsen's Form W2s;

2

- Mr. Nielsen's Form W2s reported a total income  number that was false because it was higher than his actual income;

- Defendants filed these false Form W2s with the IRS;

- As a result, Defendants were able retain the revenue that was falsely attributed to Mr. Nielsen without reporting to the IRS that they had retained the income;

- Therefore, while Mr. Nielsen's tax liability was increased, Defendants' tax liability was decreased.

These allegations are not "legal conclusions" and do far more than recite the legal elements of a Section 7434 claim. These allegations clearly state that Defendants willfully filed Form W2s with the IRS that fraudulently reported that Mr. Nielsen had earned more income than he actually had. Nothing further is required.

Defendants' FRCP 8 argument also fails because a plaintiff is not required to allege that a defendant will benefit financially by violating Section 7434. In any event, Mr. Nielsen did allege an irrefutable financial benefit to Defendants as a result of their IRC violations; namely, they avoided paying anywhere between 15-35% in federal taxes on monies falsely attributed to Mr. Nielsen. In response to this allegation, Defendants strangely argue that it is implausible that Defendants would engage in criminal activity for a financial benefit. Defendants' FRCP 9 arguments are equally devoid of merit as Plaintiff alleged more than sufficient details to meet the heightened pleading standards for fraud.

## FACTS[1]

Defendants own and operate three restaurants in New York, New York, all named "P.J. Clarke's." Gottlieb Aff. Ex. A, ¶ 26. Mr. Nielsen was employed by Defendants as a bartender,

---

[1]     For the sake of brevity, only those facts related to Plaintiff's IRC claim are recited herein.

at their PJLS and PJ3rd locations from approximately March 2007 to February 2012. *Id.* at ¶ 7. At the conclusion of his shift each evening, Mr. Nielsen was required to record the amount of tips he received on a tip log. *Id.* at ¶ 46. Defendants required Mr. Nielsen to state on the tip log that he received more money in tips than he actually had. *Id.* at ¶¶ 46-48. Thus, each evening Mr. Nielsen left P.J. Clarke's with less money than was reported on the tip log. *Id.* As a result, the tip log reported that P.J. Clarke's retained less money than it actually did. *Id.* at ¶¶ 46-51. Defendants not only specifically instructed Plaintiff to overstate his tips, but refused to change their policies when confronted by Plaintiff. *Id.* at ¶ 59. Instead, Defendants conditioned Plaintiff's employment on complying with them. *Id.*

The inaccurate figures recorded on the tip log, including the overstatement of the amount of tips retained by Mr. Nielsen, were reflected in the wage statements Mr. Nielsen received each week. *Id.* at ¶¶ 45, 49. Thus, as a result of Defendants' practices concerning the reporting of tip income, the wage statements furnished to Mr. Nielsen by Defendants falsely stated that Mr. Nielsen had received more compensation than he actually had. *Id.*

The figures on the tip log and wage statements were, in turn, reflected on Mr. Nielsen's Form W2 statements. *Id.* at 49, 53-54. These inaccurate Form W2 statements were furnished by Defendants to the IRS and, as a result, Mr. Nielsen was subjected to greater tax liability than he would have been if accurate Form W2s had been provided to the IRS. *Id.* at ¶ 56. On the other hand, Defendants were able to retain revenue that they were reporting as having been paid to Mr. Nielsen. *Id.* at ¶ 50-51. Therefore, Defendants' tax liability was decreased. *Id.* These fraudulent Form W2s were prepared, filed and submitted to the IRS by Defendants. *Id.* at ¶ 55. Upon information and belief, Defendants' owners and supervisory and managerial employees, including Phil Scotti, Arnold Penner, Stephen Siegel and Timothy Hutton, were involved in the

4

preparation, filing and submission of the fraudulent Form W2s. *Id.* The fraudulent statements at issue in this action are solely the amounts of money that were reported by Defendants to the IRS on Plaintiff's Form W2s. *Id.* at ¶ 54.

On November 16, 2012, Plaintiff filed the initial Complaint in this action against Defendants, alleging numerous violations of federal and state law, including, *inter alia*, Defendants' willful filing of fraudulent information returns with respect to payments purportedly made to Plaintiff in violation of Section 7434. Gottlieb Aff. Ex. B. On January 4, 2013, Defendants filed a partial motion to dismiss Plaintiff's original Complaint. (ECF Dkt. No. 11). Despite the futility of the motion, Plaintiff amended his Complaint in an effort to address the purported deficiencies and avoid unnecessary motion practice. Gottlieb Aff. Ex. A. Defendants then filed the instant partial motion to dismiss.

Realizing that the facts alleged in the Amended Complaint were sufficient to support Mr. Nielsen's IRC claim, and in an effort to obfuscate the issues, Defendants simply invented allegations that are found nowhere in the Amended Complaint. Most egregiously, Defendants claim that "Plaintiff filed an amended complaint on January 25, 2013 wherein he alleged a new theory that Defendants instructed ***only*** Plaintiff, rather than the entire waitstff [*sic*], to overstate his tips." Def. Br., p. 5 (emphasis added). To support this claim, Defendants cite to the entire Amended Complaint. *Id.* However, the Amended Complaint simply does not allege that Plaintiff was the ***only*** individual required by Defendants to overstate his tips. *See* Gottlieb Aff., Ex. A. Nevertheless, Defendants repeat this patently false claim numerous times in their brief, and rely on it to support their FRCP 8 and 9 arguments:

> • The Amended Complaint consists solely of the "implausible claim – that from its hundreds of existing and former waitstaff [*sic*] employees Defendants requested that ***only*** Plaintiff overstate his tip income";

- "No plausible claim for relief is alleged, nor could one be, because there is no meaningful financial gain or other advantage to be gained by overstating a ***single employee's*** tip income";

- "Plaintiff now alleges that *he* was the ***sole employee*** told by Defendants to over-state his tips";

- "Plaintiff fails to offer any plausible explanation why Defendants would require ***only him and none of the other employees*** to overstate their tip income";

- "Plaintiff alleges in broad and unspecified terms that ***only*** he was required to over-state his tip income";

- The Amended Complaint fails to explain "why ***only Plaintiff*** was instructed to overstate his tip income"; and

- "Plaintiff does not allege any facts that explain why Defendants would implement a plan ***directed at only one employee*** when Defendants could achieve a greater benefit if multiple employees were required to overstate tips."

Def. Br. pp. 8, 9, 10, 10, 17, 18-19, 21-22 (emphasis added except for "*he*").

On February 28, 2013, in an effort to obtain clarification concerning Defendants' misrepresentations, Plaintiff's counsel requested that Defendants' counsel identify the specific allegations it relied on in asserting that Plaintiff alleged he was the "only" victim of Defendants' IRC violations. Gottlieb Aff., Ex. D. In response, Defendants' counsel identified all of the paragraphs concerning Defendants' fraudulent scheme, but failed to identify the specific allegations supporting their misrepresentation. *Id.* Plaintiff's counsel explained that the identified paragraphs did not allege that Mr. Nielsen was the only employee told to overstate his tips, and asked that Defendants' counsel be more specific. *Id.* Defendants' counsel responded simply that Defendants disagreed with Plaintiff's "interpretation" of the Amended Complaint. *Id.* Plaintiff's counsel then explained that Defendants' misrepresentations should not have been

put before the Court given that they lacked any conceivable basis, and gave Defendants' counsel

a final opportunity to explain the basis for the inaccurate assertions. *Id.*

The following day, Defendants' counsel called Plaintiff's counsel and explained that the

sole basis for the misrepresentations was the fact that Plaintiff had amended the Complaint to

remove class-wide allegations. Gottlieb Aff., Ex. E. Plaintiffs' counsel explained that the

removal of the class allegations was irrelevant because the Amended Complain simply does not

allege that Plaintiff was the only victim of Defendants' IRC violations. *Id.* Defendants' counsel

refused to put Defendants' purported justification in writing. *Id.* Plaintiffs' counsel then wrote a

letter to Defendants' counsel summarizing the communications, but to date has received no

further response or explanation. *Id.*

## ARGUMENT

## I.   THE AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF UNDER 26 U.S.C. § 7434

Rule 12(b)(6) states that a claim will be dismissed if it "fail[s] to state a claim upon

which relief can be granted." In order to state a claim for relief, Rule 8(a)(2) requires only a

"short and plain statement of the claim showing that the pleader is entitled to relief." *See also*,

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not require "detailed

factual allegations," but only that the statements in the complaint make the claimed violation of

law "plausible on its face." *Twombly*, 550 U.S. at 555, 570. This "plausibility" standard is

satisfied by a complaint that contains enough factual content to allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). Of course, on a motion to dismiss, a

court must proceed "on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Twombly*, 550 U.S. at 555. With these standards in mind, in order to state a

claim under Section 7434, a plaintiff must allege "(1) that the Defendants issued 'information returns'; (2) that the information returns were fraudulent; and (3) that Defendants willfully issued fraudulent returns." *Pitcher v. Waldman*, 2012 WL 5269060 at \*4.

A.   **Defendants' Rule 8 Argument Relies Entirely On Their False Claim That Mr. Nielsen Alleged He Was The Only Victim Of Defendants' IRC Violations**

In arguing that Mr. Nielsen failed to state a plausible claim for relief under Rule 8, Defendants rely entirely on their fictitious assertion that the Amended Complaint alleges that: "from its hundreds of existing and former waitstaff [*sic*] employees Defendants requested that *only* Plaintiff overstate his tip income." Def. Br. at p. 8 (emphasis added).  This assertion, of course, is not supported by any citation to any specific allegation in the Amended Complaint. The Amended Complaint simply contains no allegation which can be cited to support that proposition.  The Amended Complaint does not speak to whether or not other employees were required to overstate tips, and Defendants' claim to the contrary is more than disingenuous -- it is a complete misrepresentation.

This misrepresentation provides the entire basis for Defendants' argument that the Amended Complaint fails to satisfy Rule 8.  Defendants summarize their Rule 8 argument as follows:

> "Once the conclusory allegations of Plaintiff's Section 7434 claim are stripped away all that remains is the following ***implausible claim*** – that from its hundreds of existing and former waitstaff [*sic*] employees ***Defendants requested that only Plaintiff overstate his tip income*** so they could 'covertly retain' the corporate income tax savings on Plaintiff's alleged inflated tip income.  However, applying the *Iqbal* mandated common sense review of Plaintiff's claim underscores that ***no plausible claim for relief is alleged***, nor could one be, ***because*** there is no meaningful financial gain or other advantage to be gained by overstating ***a single employee's*** tip income."
>
> . . .

8

> Plaintiff now alleges that *he* was the ***sole employee*** told by
> Defendants to over-state his tips so Defendants could disguise
> certain revenue as his tips/income and thereby avoid paying
> corporate taxes.  However, Plaintiff fails to offer any ***plausible***
> ***explanation*** why Defendants would require ***only him and none of***
> ***the other employees*** to overstate their tip income.

Def. Br. at pp. 9-10 (emphasis added except for "*he*").  Mr. Nielsen never alleged he was the

only individual forced to overstate his tip income; thus, Defendants' plausibility argument is

completely frivolous and must be disregarded.  Defendants never should have presented this

frivolous argument to the Court and Plaintiff should not even be obligated to oppose it.

Moreover, Defendants' Rule 8 argument would be completely baseless *even if Plaintiff*

*had alleged he was the only individual required to overstate tip income*.  Defendants' argue that

Plaintiff's IRC claim is implausible because of the purported lack of financial motive to engage

in fraud as to only a single employee.  Def. Br., p. 9-10.  However, Defendants conveniently

ignore the fact that proof of financial motive is not an element of a Section 7434 claim.  *See*, *e.g.*,

*Pitcher v. Waldman*, 1:11 Civ. 148, 2012 WL 5269060, *4 (S.D. Ohio Oct. 23, 2012) (to

establish a Section 7434 claim, a plaintiff must show "(1) that the Defendants issued

'information returns'; (2) that the information returns were fraudulent; and (3) that Defendants

willfully issued fraudulent returns.") (citing *Cavoto v. Hayes*, No. 08 Civ. 6957, 2010 WL

2679973, *4 (N.D. Ill. July 1, 2010)).  Therefore, Rule 8 does not require Plaintiff to allege or

explain that any benefit was received by Defendants as a result of their fraudulent scheme.

Nevertheless, Mr. Nielsen *did* allege a financial motive for Defendants' fraudulent

conduct; namely, decreased tax liability.  Gottlieb Aff. Ex. A, ¶¶ 50-51.  In fact, Defendants

concede that, as the Amended Complaint alleged, Defendants would be relieved of certain tax

obligations and profit as a result of overstating the compensation paid to Mr. Nielsen.  Def. Br.,

p. 21 n. 6.[2]  Defendants' self-serving claim that Plaintiff's allegations cannot be true because Defendants would have risked criminal prosecution by engaging in fraud, is both a naïve and preposterous argument.  Taken to its logical conclusion, any defendant in any litigation could argue that it could not possibly have engaged in the alleged conduct because doing so would be irrational as it could lead to liability or criminal prosecution.  Criminal defendants could argue for dismissal of criminal charges because it would be irrational to expose oneself to criminal prosecution.  Indeed, every single criminal and civil action would be dismissed with that argument in hand.

Cutting through the complete misrepresentations in Defendants moving papers, the Amended Complaint easily meets the Rule 8 pleading standards.  The Amended Complaint alleges the following with respect to Mr. Nielsen's IRC claims:

- Defendants intentionally required Mr. Nielsen to report more tip income than he actually earned on a nightly basis; [Gottlieb Aff. Ex. A, ¶¶ 44-48]

- The amount of tip income reported, which was more than Mr. Nielsen actually earned, was declared by Defendants as income on Mr. Nielsen's Form W2s; [Gottlieb Aff. Ex. A, ¶ 49]

- Mr. Nielsen's Form W2s reported a total income number that was false because it was higher than his actual income; [Gottlieb Aff. Ex. A, ¶¶ 49, 53]

- Defendants filed these false Form W2s with the IRS; [Gottlieb Aff. Ex. A, ¶ 55]

- As a result, Defendants were able retain the revenue that was falsely attributed to Mr. Nielsen without reporting to

---

[2]     Specifically, Defendants' assertion that they lacked a financial motive to engage in the fraud alleged fails to acknowledge that they retained tens of thousands of dollars of income without having to pay *any* federal corporate income tax.

> the IRS that they had retained the income; [Gottlieb Aff.
> Ex. A, ¶¶ 50-51]

- Therefore, while Mr. Nielsen's tax liability was increased, Defendants' tax liability was decreased. [Gottlieb Aff. Ex. A, ¶ 51]

Thus, the Amended Complaint alleges that the information returns at issue are Form W2s. There is no dispute (nor can there be) that Form W2s are information returns within the meaning of Section 7434. *See* 26 U.S.C. § 7434 (defining information returns by reference to 26 U.S.C. § 6724(d)(1)(A), which includes statements relating to income tax withheld). Plaintiff also adequately alleged that the Form W2s issued by Defendants were fraudulent because (i) the total income reported to the IRS by Defendants on the Form W2s was false and (ii) Defendants intentionally filed the Form W2s with the knowledge that they were false. In fact, by requiring Plaintiff to overstate his income on a nightly basis, Defendants intentionally implemented and effectuated the policy that directly resulted in the Form W2s being false. The fact that Defendants were aware of the falsity of the Form W2s at issue, and in fact caused that falsity by virtue of their policies, demonstrates that the filing of the fraudulent W2s was willful. Though financial motive is not an element of a Section 7434 claim, it bears noting that Plaintiff also alleged a financial motive on the part of Defendants; namely, to shift their tax burden to Mr. Nielsen.

Defendants' FRCP 8 argument, to the extent it properly characterizes any of the allegations in the Amended Complaint, amounts to nothing more than a request that the Court disbelieve Mr. Nielsen's allegations that (i) Defendants required him to overstate his tips and (ii) as a result, Defendants issued false Form W2s to the IRS. However, the Second Circuit recently warned that disbelief of a complaint's allegations is completely inappropriate when conducting an FRCP 8 analysis:

> Rather, in determining whether a complaint states a claim that is plausible, the court is required to proceed "on the *assumption that all the [factual] allegations in the complaint are true.*" *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (emphasis added). Even if their truth seems doubtful, "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *id.* at 556, 127 S.Ct. 1955 (internal quotation marks omitted). Given that the plausibility requirement "*does not* impose a *probability* requirement at the pleading stage," the *Twombly* Court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely."

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (*cert. denied,* 133 S. Ct. 846 (U.S. 2013)) (emphasis in original).  Plaintiff certainly alleged facts that, if taken as true, establish Defendants' violation of Section 7434. [3]

---

[3]      Defendants also inappropriately attack the veracity of Plaintiff's allegation that Stephen Siegel and Timothy Hutton were involved in implementing, effectuating and communicating Defendants' policies.  The relevant allegation reads as follows:

> Defendants' supervisory and managerial employees, including but not limited to Phil Scotti, Arnold Penner, Stephen Siegel and Timothy Hutton implemented, effectuated policies requiring Plaintiff to report more tips than he actually received, and communicated to Plaintiff that he had to report more tips than he actually received.  These communications were made to Plaintiff on a daily basis when his tip logs were completed.

Defendants interpret this statement as alleging that every single one of Defendants' supervisory and managerial employees, as well as Messrs Scotti, Penner, Siegel and Hutton all told Plaintiff to overstate his tips on a daily basis. *See* Def. Br., pp. 10-11.  This is an unreasonable reading of the allegation, which merely states that Messrs Scotti, Penner, Siegel and Hutton were involved in operating Defendants' restaurants and responsible for Defendants' policies. Furthermore, ***Defendants' website, which is the website for all Defendants, proudly boasts that Messrs Siegel and Hutton are two of only four members of Defendants' "leadership."***  Gottlieb Aff. Ex. C. Though in their motion Defendants focus on Mr. Hutton's "contributions to acting, [ ] in New York he's also a hero who helped revive P.J. Clarke's with the other three leaders." *Id.*  In addition to his leadership, Defendants' website notes that Mr. Hutton is a "true patron" of P.J. Clarke's despite having time to film "dozens of films." *Id.*

Therefore, Defendants' motion to dismiss on the grounds that the Amended Complaint fails to meet the Rule 8 pleading standards must be denied as utterly frivolous.

## II. THE AMENDED COMPLAINT PLEADS FRAUD WITH SUFFICIENT PARTICULARITY UNDER RULE 9

Plaintiff does not dispute that when a complaint alleges fraud it must "state with particularity the circumstances constituting [the] fraud." FRCP 9(b). This heightened pleading standard simply requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). A plaintiff also must "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quotation omitted). However, on "a motion to dismiss a complaint for failure to plead fraud with particularity as required by Rule 9(b), plaintiffs' allegations must be taken as true." *Griffin v. McNiff*, 744 F. Supp. 1237, 1244 (S.D.N.Y. 1990) *aff'd*, 996 F.2d 303 (2d Cir. 1993) (citing *Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986). That is, "[t]he Court must read the complaint generously, and draw all inferences in favor of plaintiffs." *Id.* (citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)).

### A. The Amended Complaint Adequately Pleads Fraudulent Intent [4]

As a threshold matter, "[i]f it is clear from the pleading that the statements of a particular defendant were known or must have been known to be false, this is enough to show fraudulent intent." *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 527 (S.D.N.Y. 2011); *see also Griffin*, 744 F. Supp. at 1246 ("the lenient standard for pleading scienter will be satisfied even if plaintiffs do not allege facts which demonstrate that defendants had a motive for committing

---

[4]     The sections of Defendants' brief relating to the FRCP 9 pleading requirements, particularly pp. 14-22, are disorganized and scattered. Plaintiff will nonetheless attempt to address them in order.

fraud, so long as plaintiffs adequately identify circumstances indicating conscious behavior by

defendants."). The Amended Complaint not only alleges that the Form W2s were false, but also

details the intentional policy of Defendants that led to the overstatement of Mr. Nielsen's total

income. The allegations herein are analogous to those in *T.H.C., Inc. v. Fortune Petroleum*

*Corp.*, 96 CIV. 2690(DAB), 1999 WL 182593, *4 (S.D.N.Y. Mar. 31, 1999):

> The allegations of the Third Party Complaint state that [the third-
> party defendant] knowingly executed, and even directed, stock
> transactions during the restricted periods at a time of the day
> deliberately calculated to mark the closing price at a lower level
> than it otherwise would have had . . . Such allegations of knowing
> misconduct are sufficient to constitute a strong inference of
> fraudulent intent.

Similarly, Mr. Nielsen alleges that Defendants intentionally executed, and even directed, a policy

that was calculated to inflate Mr. Nielsen's total income. As such, it is undeniable that

Defendants knew that the total income numbers reflected on Mr. Nielsen's Form W2s were false.

This, in itself, is sufficient to satisfy the intent prong of the FRCP 9 pleading requirement.

    A strong inference of fraudulent intent can alternatively be established by alleging that

"defendants had both motive and opportunity to commit fraud, **or** (b) by alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459

F.3d at 290 (emphasis added) (quotation omitted). These allegations may be general in nature.

*Id.* ("[m]alice, intent, knowledge, and other condition of mind of a person may be averred

generally.") (quoting FRCP 9(b)). Mr. Nielsen's pleadings easily satisfy both tests.

    Defendants had a financial motive to overstate the amount of income Mr. Nielsen had

earned each year. As alleged, by overstating Mr. Nielsen's income Defendants were able to

understate their own profits and avoid paying corporate income taxes amounts purported to be

paid to Plaintiff. *See e.g.*, *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, 92 CIV. 4528(LJF), 1993 WL

51094, *3 (S.D.N.Y. Feb. 24, 1993) ("The financial gain to [a defendant] alleged by Mayatextil

establishes a motive to commit fraud."). This is not a general or conclusory allegation. Indeed, Mr. Nielsen has identified a very specific, particular and "concrete" benefit to Defendants of falsely inflating Plaintiff's reported income to reduce their own. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.").

Defendants likewise had the opportunity to commit the fraud alleged by Mr. Nielsen, as they (i) exert ultimate control over the information returns they furnish to the IRS, (ii) create the information returns in the first instance and (iii) exert control over the day-to-day reporting of revenue and expenses that is ultimately reflected in the information returns furnished to the IRS. This would give Defendants the "means and likely prospect of achieving concrete benefits by the means alleged," which suffices to establish opportunity. *Id.*

Even assuming, *arguendo*, that the Amended Complaint fails to adequately plead that Defendants knew the total income numbers on Mr. Nielsen's Form W2s were false *or* that Defendants had the motive and opportunity to commit fraud, the Amended Complaint would still sufficiently plead scienter because it alleges facts that establish strong circumstantial evidence of misbehavior or recklessness. The Amended Complaint specifically alleges that Defendants required and directed Mr. Nielsen to overstate his income. Mr. Nielsen even confronted Defendants about this practice and, rather than putting a stop to this policy, Mr. Nielsen was told that his job was contingent on complying with it. It cannot be disputed that requiring an employee to overstate his income and providing false Form W2s to the IRS that serve to increase the employee's tax liability and decrease the employer's tax liability constitutes misbehavior.

Defendants' reliance of *Shields* is misplaced because this is not a situation wherein Defendants "should have been more alert and more skeptical." *Shields*, 25 F.3d at 1129. Rather,

this is a situation where Defendants actively and intentionally engaged in misbehavior resulting in the submission of false Form W2s.  Defendants' analogy to *Murphy v. Int'l Bus. Machines Corp.*, 10 CIV. 6055(LAP), 2012 WL 566091, *5 (S.D.N.Y. Feb. 21, 2012) is similarly misplaced because in *Murphy* the plaintiff was unable to even identify a false statement.  *Id.* at *5 ("Plaintiffs do not point to any specific document or communication which they allege with particularity contained a specific misrepresentation or omission of a material fact.").

Defendants' arguments concerning Plaintiff's "upon information and belief" allegations also miss the mark.  Indeed, Defendants fail to even identify the specific allegations that were purportedly improperly alleged "upon information and belief."  Plaintiff's "upon information and belief" allegations are limited to his allegations that: (i) "the result of [requiring Plaintiff to overstate his income] was that Defendants were able to covertly retain revenue that was being falsely attributed to Plaintiff." and (ii) "Phil Scotti, Arnold Penner, Stephen Siegel and Timothy Hutton, among other individuals, was involved in Defendants' preparation, filing and submission of the fraudulent information returns and Form W-2s."  Gottlieb Aff. Ex. A, ¶¶ 50, 55.  However, both of these allegations provide proper support for Plaintiffs' claim as they involve "facts peculiarly within the opposing party's knowledge" and are "accompanied by a statement of facts upon which the belief is based."  *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) ("Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge . . . Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.") (internal citations omitted).

With respect to the first allegation, an examination of Defendants' financial records would be necessary to personally allege that the income falsely attributed to Plaintiff was covertly retained by Defendants. However, the Amended Complaint contains allegations establishing the basis of Plaintiff's belief, including that (i) Plaintiff was required to overstate his income, (ii) Plaintiff was required to pay taxes on the income declared to the IRS on his Form W2s, (iii) Defendants would not have to pay corporate income tax on the dollars falsely attributed to Plaintiff, (iv) Defendants would profit from being able to retain the money falsely attributed to Plaintiff without paying such taxes and (v) Defendants prepared, filed and submitted the false Form W2s to the IRS. Gottlieb Aff. Ex. A, ¶¶ 44-56. Likewise, it would be impossible for Plaintiff to have personal knowledge of the exact individuals who prepared, filed and submitted the false Form W2s. However, Mr. Nielsen did allege that the individuals identified were owners and/or operators of Defendants, and it is a reasonable belief that such individuals would be involved in preparing tax documents for their employees. Plaintiff also pled that the false Form W2s were "were prepared, filed and submitted by Defendants." *Id.* at ¶ 55.

In any event, Defendants' claim that the facts alleged upon information and belief are not peculiarly in their knowledge – a claim they make without even identifying the allegations they believe are inappropriate – is entirely nonsensical. Defendants argue that because Plaintiff alleged that certain individuals implemented the policies requiring him to overstate his tips, he must also have knowledge of every last detail, including utter minutia, concerning the fraud perpetrated by Defendants. Def. Br., pp. 15-17. However, the fact that Plaintiff knew the individuals responsible for implementing and effectuating Defendants' policies does not indicate that Plaintiff had personal knowledge concerning what Defendants did with their ill-gotten profits or who exactly filled out Plaintiff's Form W2s.

Finally, Defendants' contention that Plaintiff has not "established" any facts supporting a plausible claim that he was deceived by Defendants is irrelevant. Section 7434 does not require that a plaintiff be deceived by Defendants' violation, and the Amended Complaint, as explained, alleges that Defendants deceived and defrauded the IRS.

**B.      The Amended Complaint Alleges Specific Facts That Show Fraud**

Defendants also argue that "Plaintiff fails to allege any concrete facts to support his fanciful claims that a fraud was committed and instead alleges the following *conclusions*." Def. Br., p. 17. To "support" this argument, Defendants quote from three of the paragraphs in the "claim for relief" section of the Amended Complaint that allege the legal standard under Section 7434. Gottlieb Aff., Ex. A, ¶¶ 113-115. Defendants, without referencing any of the many other allegations in the Amended Complaint, offer the following conclusion:

> Absent any supporting factual allegations demonstrating a plausible entitlement to relief, bare allegations such as these render Plaintiff's Section 7434 claim subject to dismissal because the Court cannot infer a right to relief above the speculative level. Plaintiff cannot satisfy his pleading obligations by merely reciting the statute and making conclusory assertions that Defendants intended to violate its provisions.

Def. Br., p. 18. As described *supra,* pp. 4-5, 10-11, the Amended Complaint contains numerous factual allegations in support of Plaintiffs' Section 7434 claim. It is unclear why Defendants ignored the entirety of the Complaint in making this argument.

Defendants also claim that additional details had to be alleged, without providing a single authority to suggest that the information had to be pled. Defendants' Br., pp. 18-19. The vast majority of information Defendants contend Plaintiff failed to allege is not even directly related to the false statements at issue; namely, the numbers reported on Mr. Nielsen's Form W2s. *See, e.g.*, Def. Br., pp. 18-19. Plaintiff was required only to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290. As explained above, the Amended Complaint adequately pleads that the fraudulent statements at issue, which were made by Defendants when furnishing Plaintiff's Form W2s to the IRS.

### C.    Plaintiff Alleged A Plausible Motive For Defendants' Fraud

Defendants finish their motion with a slew of completely disjointed arguments concerning their purported lack of motive to violate the IRC. Def. Br., pp. 20-22. Defendants attack Plaintiff for failing to allege certain facts without providing any authority to suggest that the facts had to be alleged. As a threshold matter, alleging motive and opportunity is not necessary as it is only one of the three methods of pleading scienter for a claim based on fraud. *See, e.g., In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 527 (S.D.N.Y. 2011) ("[i]f it is clear from the pleading that the statements of a particular defendant were known or must have been known to be false, this is enough to show fraudulent intent."); *Griffin*, 744 F. Supp. at 1246 ("the lenient standard for pleading scienter will be satisfied even if plaintiffs do not allege facts which demonstrate that defendants had a motive for committing fraud, so long as plaintiffs adequately identify circumstances indicating conscious"); *Lerner*, 459 F.3d at 290-91 (scienter can be established "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."). As explained *supra*, pp. 1-4, 10-11, 14, Mr. Nielsen's allegations make clear that (i) Defendants were aware that the income numbers reported to the IRS on his Form W2s was false and (ii) Defendants engaged in conscious misbehavior or recklessness. Also as explained *supra*, pp. 10, 14-15, Plaintiff pleaded that Defendants had a financial motive and opportunity to engage in the fraud alleged. Nothing more is required.

19

## CONCLUSION

For all of the foregoing reasons, Defendants' Partial Motion to Dismiss Plaintiff's

Section 7434 claims must be denied in its entirety and Plaintiff should be awarded the costs and

fees incurred in defending this motion.


Dated: March 11, 2013
      New York, New York            Respectfully submitted,

THOMPSON WIGDOR LLP

By: _____
           Douglas H. Wigdor
           David E. Gottlieb
           Michael J. Willemin

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
dwigdor@thompsonwigdor.com
dgottlieb@thompsonwigdor.com
mwillemin@thompsonwigdor.com

*Counsel for Plaintiff*